CHARLES E. DRAYTON ET AL. v. THOMAS E. CHANDLER
AND FRANKLIN TAYLOR.

*Mortgage—Foreclosure—Surety—Subrogation.*

1. A statutory foreclosure is not adapted to cases where there are conflicting equities, which can only be properly considered and protected in a court of chancery; citing *Dohm v. Haskin,* 88 Mich. 144.[1]

2. The purchaser of a saw-mill, boiler, and engine secured the payment of the purchase price by a chattel mortgage on the property. The indebtedness was further secured by a real-estate mortgage executed by the vendee's wife, and one-half of the debt was also secured by a second real-estate mortgage executed by a third party. The mortgagees seized the property, and sold it at private sale, to which sale the third mortgagor assented, but without agreeing upon the price. The mortgagees also appropriated certain personal property belonging to the third mortgagor at the time of the seizure of the chattel-mortgaged property. And it is held that such appropriation of the chattel-mortgaged property did not operate as a payment of the entire debt, but that the mortgagees must account to the third mortgagor for the full value of the property at the time of its conversion, which value, as also that of the other property appropriated, must be applied upon the entire indebtedness, and that the remainder, if any, will be a lien upon the land covered by the third mortgage; but that, before its sale to satisfy such lien, the mortgagees must transfer to the third mortgagor the first real-estate mortgage, to which he is equitably entitled if compelled to pay any portion of the debt.[2]

Appeal from Antrim. (Ramsdell, J.) Argued October 6, 1892. Decided November 4, 1892.

Bill to set aside a statutory foreclosure, to declare void the deed executed thereon, and to cancel the mortgage and note. Defendants appeal. Decree reversed, and case remanded for

[1] See *Olcott v. Crittenden,* 68 Mich. 230; *Strong v. Tomlinson,* 88 Id. 112.

[2] See *Bank v. Denison,* 92 Mich. 418.

further proceedings in accordance with the opinion, in which the facts are stated.

*Leavitt & Guile,* for complainants.

*Nelson C. Weter,* for defendants.

DURAND, J.  This cause was commenced in the circuit court for the county of Antrim, in chancery, by sworn bill of complaint, signed by William L. Drayton and Hattie A. Drayton, as complainants, for the purpose, among other things, of having a certain sheriff's deed on statutory sale on the foreclosure of a real-estate mortgage set aside, and the foreclosure proceedings declared void; and also for the purpose of having the said mortgage, and a promissory note given therewith, declared satisfied and canceled.  Before the proofs were taken, complainant William L. Drayton died, and his sons, Charles E. and Ben S. Drayton, were substituted in his stead as complainants.  The record shows that, after prolonged negotiations, one John W. Willis, on November 12, 1884, concluded a purchase from the defendants, Chandler & Taylor, of a second-hand saw-mill, boiler, and engine for $1,600, payable according to three promissory notes executed by John W. Willis and Nancy Willis, his wife, to said Chandler & Taylor on October 15, 1884.  One of the notes was for $200, due January 1, 1885; one for $600, due April 1, 1885; and one for $800, due January 1, 1886,—with 10 per cent. interest.  As security for the payment of these notes, John W. and Nancy Willis, on November 12, 1884, executed a chattel mortgage for $1,600 on the saw-mill, boiler, engine, and appurtenances; and on the same day Nancy Willis executed to Chandler & Taylor a mortgage for $1,600 on certain real-estate owned by her, which mortgage was also given as security for said notes.  On the same day William L. Drayton executed to Chandler & Taylor his note for $800, due April 1, 1886; and, as security for the payment thereof, he and his wife, Hattie A. Drayton, executed the mortgage which was

subsequently foreclosed by advertisement, and which this bill is filed to set aside as having been satisfied, and which is the subject of the contention in this case. The parties do not agree fully as to the real consideration, or upon what contingency the mortgage was to become operative, and there is nothing in this note or mortgage to indicate what the real consideration for them was, but it is entirely apparent to us from the record that they were given as further and collateral security for the payment of the debt from Willis to Chandler & Taylor. At the time of making the contract for the purchase of the mill and other machinery from Chandler & Taylor, Drayton was the owner of land upon which stood timber of more or less value, which he desired to have sawed up; and the fact that Willis was to set up this mill and machinery upon Drayton's land, and to saw up the Drayton timber, was undoubtedly the principal cause which induced Drayton to give the mortgage referred to, and, in addition, Chandler & Taylor declined to sell Willis this property without the additional security that the Drayton mortgage furnished.

After the purchase of the mill, Willis caused it to be set up upon the Drayton land, and did some sawing afterwards, but not for a very great length of time, when he finally abandoned it. Chandler & Taylor then took possession of this mill and machinery under their chattel mortgage, but did not regularly foreclose the same, but such talk was had between the parties as finally resulted in the claim made by Chandler & Taylor that they took this mill as payment for the $600 note, including the accrued interest thereon, the first $200 note having been paid before that time by Willis. The record shows that Chandler & Taylor afterwards sold this mill and machinery to one Jones for $750. The last $800 note of the original indebtedness from Willis to them, according to their claim, still remained due and unpaid.

93 Mich.—25.

No regular foreclosure and sale of the mill and machinery, which was taken and appropriated by them by virtue of the chattel mortgage held by them, had ever been made, or attempted to be made; no proceedings had been taken by them for the foreclosure of the Nancy Willis real-estate mortgage; and with this condition existing, and without any proceedings being taken or attempted by them looking towards the settlement of the equities existing between them and Willis or the Draytons, they treated the Drayton note and mortgage as a separate and distinct security, and one in which they alone had any interest. In pursuance of this view, they proceeded to foreclose the Drayton mortgage by advertisement in the usual form, and did foreclose it by a sale, which took place in pursuance of the usual statutory notice, on the 23d day of December, 1887. At this sale the Draytons made some objections in reference to the foreclosure by advertisement, but the sale was proceeded with, and the deed executed by the sheriff on that day.

At the hearing in the court below, the court did not determine whether the Drayton note and mortgage was intended as a guaranty of collection, or whether it was security for payment, as, in his view of the case, it was unnecessary to find that fact. His views were based upon the proposition that where a chattel mortgage is taken as security for a debt, and a party holding the chattel mortgage, under his power of seizure, takes the property and appropriates it to himself, it works a cancellation of the debt. He also held that in this case there was no sale such as was contemplated and required by the chattel mortgage; and that Chandler & Taylor, having taken the chattel-mortgaged property in their own hands, had no right whatever to call upon the Draytons for anything in addition. The decree was accordingly entered in favor of

the complainants, granting them the relief prayed for, which was a cancellation of the alleged sale under the foreclosure of the Drayton mortgage, and also a cancellation of the note and mortgage as well.

From this decree the defendants appeal.

It is apparent from the whole record that the chattel mortgage, the Nancy Willis mortgage, and the Drayton mortgage were all given to secure the same debt, which was the debt existing from John W. Willis to Chandler & Taylor. The Draytons, who gave their mortgage as collateral security for the payment of this debt, were interested in the security assured by the other two mortgages. If, by a legal enforcement of those securities, enough had been realized to pay the debt, the Drayton mortgage would have been considered as paid; and if enough had not been obtained, or if for any reason the Draytons had been compelled to pay any portion of the debt, they would have been entitled to be subrogated to all the rights of Chandler & Taylor in those securities. The foreclosure of the Drayton mortgage by advertisement was a practical denial of all these rights. It was a denial of the contention made by the Draytons that no liability existed against them under their mortgage except upon the contingency claimed by them in the bill,—that the property covered by the chattel mortgage should be destroyed by fire. Under these circumstances, the Drayton mortgage could not be properly foreclosed by advertisement, and that sale must be declared void. In this case the defendants should have proceeded to foreclose the Drayton mortgage in equity, where all the rights of the parties could have been equitably determined and protected. That the statutory foreclosure by advertisement is not adapted to cases where there are conflicting equities, which can only be properly considered and protected in a court of chancery, was clearly held by this

Court in *Dohm v. Haskin*, 88 Mich. 144, and we consider that as the settled law of this State.

We think, however, that the learned circuit judge was in error, under the facts presented by the record in this case, in holding that the mere appropriation of the property covered by the chattel mortgage operated as a payment of the entire debt, and a full satisfaction of the Drayton mortgage.     Drayton having assented to the sale, but no price having been agreed upon, we are of the opinion that the correct rule to apply in this case is that the defendants be held to an accounting with the complainants for the full value at the time of its conversion by them of the property covered by the chattel mortgage, and which was appropriated by them in violation of its provisions, and that such value shall be applied upon the indebtedness, for part of which the Drayton mortgage is collateral security.     While the bill does not ask this specific relief, yet we consider it sufficient as a bill to redeem, and the prayer for general relief will be treated as a prayer to be allowed to redeem.[1]     This is in accordance with the doctrine asserted in *Flanders v. Chamberlain*, 24 Mich. 305, and is within the rule laid down by the Court in numerous cases.     And equity, having once acquired jurisdiction, may retain it to give such full relief as will finally dispose of the controversy.     This right is fully asserted in *Whipple v. Farrar*, 3 Mich. 436, and *Miller v. Stepper*, 32 Id. 194; and has been steadily adhered to in every other case where the question has arisen in this Court. We shall therefore hold this as a bill to redeem.     The full amount of all payments must be allowed upon the indebtedness as of the time when made.     The full value of the property covered by the chattel mortgage, and which

---

[1] See *Huyck v. Graham*, 82 Mich. 353; *Pritchard v. Kalamazoo College*, Id. 587.

we find was taken and unlawfully appropriated by the defendants, must also be allowed as payment on the indebtedness as of the time of the misappropriation, and such value is to be fixed by the court, to which we will remand the case upon the evidence upon that point already taken in the case, and such further evidence in relation thereto as may be taken under his reasonable order for that purpose. The value of all property belonging to complainants which it shall be found by the proof was taken by the defendants at the time of the removal of the chattel-mortgaged property, as stated in the bill, shall also be allowed as payment upon the indebtedness. If any balance of said indebtedness shall then remain unpaid, such balance shall be a lien upon the property described in the Drayton mortgage, and which the court, in the exercise of its equitable power, shall order to be sold for such deficiency. In that case, however, the defendants should transfer to the complainants the real-estate mortgage given by Nancy Willis, and to which they are equitably entitled if they are to pay any of said debt, before proceeding to make sale for such deficiency.

The decree of the court below must be reversed, and the case remanded for further proceedings in accordance with the views stated. The defendants will recover the costs of this Court.

The other Justices concurred.